599 F.2d 1387
 USLIFE CREDIT CORPORATION, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
USLIFE CORPORATION, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
USLIFE CREDIT CORPORATION, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
USLIFE CORPORATION, Petitioner,
v.
FEDERAL TRADE COMMISSION, Respondent.
 Nos. 78-2989, 78-2990, 78-3445 and 78-3450.
 United States Court of Appeals,
Fifth Circuit.
 Aug. 3, 1979.
 
 Sullivan & Cromwell, Edward W. Keane (in all cases), Bruce E. Clark (in cases 78-2989, 78-2990 and 78-3450), New York City, for petitioner.
 Arthur W. Adelberg, Atty. (in all cases), Federal Trade Comm., Washington, D. C., for respondent.
 Petitions for Review of Orders of the Federal Trade Commission.
 Before TJOFLAT and VANCE, Circuit Judges, and ALLGOOD, District Judge.*
 VANCE, Circuit Judge:
 
 
 1
 This is a petition for review of a Final Order and Decision of the Federal Trade Commission dated May 23, 1978, as amended by a further Order and Decision dated September 14, 1978. In its order, the Commission found that petitioners had violated Regulation Z, 12 C.F.R. § 226.1 et seq. (1978), promulgated pursuant to the Truth in Lending Act, 15 U.S.C. § 1601, Et seq., and imposed various sanctions against them.
 
 
 2
 In 1970 USLIFE Corporation formed USLIFE Credit Corporation as a wholly owned subsidiary. USLIFE Credit operates approximately 220 consumer loan offices in 20 states. The challenged practices of USLIFE Credit involve the offering of credit insurance in consumer credit transactions. The responsibility of the parent corporation is based solely on the control that it exercises over its subsidiary.
 
 
 3
 On September 26, 1975, the Commission issued an administrative complaint alleging that USLIFE Credit was violating Regulation Z by (1) oral quotation of monthly repayment figures that include insurance charges, (2) automatic inclusion of insurance charges in loan agreement papers, (3) placement of an "X" at the appropriate signature line on the insurance authorization form prior to obtaining the customer's selection of insurance, and (4) failure to inform consumers as to the purpose of their signatures. It was contended that because of these practices USLIFE Credit should have included the insurance charges in the finance charge and the annual percentage rate.
 
 
 4
 Following a lengthy hearing, the Administrative Law Judge found that the evidence did not support the allegations of the complaint. He dismissed the complaint on January 27, 1977. On appeal the Commission reversed the ALJ's rulings, held that petitioners had violated Regulation Z, and imposed sanctions that extend far beyond the requirements of the regulation.
 
 
 5
 The pertinent part of the regulation provides as follows:
 
 
 6
 (T)he amount of the finance charge in connection with any transaction shall be determined as the sum of all charges, payable directly or indirectly by the customer . . . including . . .:
 
 
 7
 (5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless
 
 
 8
 (i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and
 
 
 9
 (ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.
 
 
 10
 12 C.F.R. § 226.4(a) (1978) (footnote omitted).
 
 
 11
 The Commission concedes that USLIFE Credit has complied technically with these provisions. In other words, (a) USLIFE Credit does not require insurance coverage, (b) that fact is clearly and conspicuously disclosed on USLIFE Credit's forms, and (c) insurance coverage is sold only on the basis of a specific dated and separately signed order following written disclosure of its cost. In addition the Commission made no allegation or finding of customer illiteracy, fraud or duress.
 
 
 12
 The Commission's May 23, 1978, decision took no note of this court's decision in Anthony v. Community Loan & Investment Corp., 559 F.2d 1363 (5th Cir. 1977). Anthony was relied on by the lender in its petition for reconsideration. The Commission responded in a second final opinion dated September 14, 1978, by characterizing Anthony as nothing more than an application of Georgia's parole evidence rule. It concluded that the rule which this court applied in private damage litigation would not apply in administrative enforcement proceedings.
 
 
 13
 We do not read Anthony so narrowly. Anthony involved a "closed-end, nonsale credit transaction." Id. at 1365. There, as here, the credit corporation complied technically with Regulation Z. Ms. Anthony contended that she neither requested nor desired insurance coverage, but merely signed the documents where told to do so. She was not allowed to testify that defendant gave her the impression that insurance was required. The Commission did not distinguish the controlling facts in Anthony from those in the present case, and we perceive no basis for distinguishing them.
 
 
 14
 In Anthony we quoted an FTC informal staff opinion as follows:
 
 
 15
 A written disclosure statement given to the consumer as required by the Truth-In-Lending Act, before consummation of the transaction, is a protection against oral misrepresentations that induce a loan. Consumers must learn to inspect disclosure statements before signing a contract, otherwise the purpose of the Act and Regulation Z will be frustrated.
 
 
 16
 Id. at 1369-70 (quoting FTC Informal Staff Opinion of December 9, 1969, (1969-1974 Transfer Binder) Cons.Cred.Guide (CCH) P 30,309). Disagreeing with the thrust of this opinion, the Commission points out that it is not the agency entrusted with the authority to promulgate implementing regulations under the Truth in Lending Act, that it is only one of several agencies that have enforcement responsibilities under the Act and that its informal staff opinion is not entitled to any special deference. The point is well taken and applies equally to the interpretations of law and regulation incorporated into the decision under review. In its prior decision this court found the FTC informal opinion to be persuasive, however, and that decision is binding on this panel.
 
 
 17
 In endorsing the FTC staff statement the Anthony court stated,
 
 
 18
 Consumers should not be encouraged to avoid reading or to ignore the information the Act requires to be provided. In addition, the Court can apply the parole evidence rule in this situation to further, not derogate, the purposes of the Act. In this situation therefore Georgia's parole evidence rule is not in conflict with the purposes of the federal statute.
 
 
 19
 559 F.2d at 1370 (emphasis added). The Commission simply missed the point of the decision in connection with the parole evidence rule. The rule was not in conflict with the statute because the testimony it barred was not testimony of a material fact.
 
 
 20
 We recognized in Anthony that there may be exceptions in the case of illiteracy, fraud or duress. Under the facts which are before us, however, literal, technical compliance with the regulation is all that is required.
 
 
 21
 The Commission argues in brief that we must afford consumers a "free and knowing choice as to their insurance option." With respect to the particular question under consideration, both the statute and the regulation are clear and understandable. To the extent that the Commission's position would impose additional requirements or conditions, it is addressed to the wrong forum. The idea that disclosure requirements should be broadened to provide more meaningful information to borrowers than is now required is a matter for the consideration of Congress.
 
 
 22
 We conclude that the Commission's decision is contrary to law. Its order must be vacated and set aside.
 
 
 23
 ORDER VACATED AND SET ASIDE.
 
 
 
 *
 District Judge of the Northern District of Alabama, sitting by designation